UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:10-CV-161-RLV

| | |
|---|---|
| MARIA LUISA MOJICA ESTRADA as Administrator of the Estate of MARCELO ESTRADA-AVELLANEDA, deceased,<br><br>Plaintiff,<br><br>vs.<br><br>CONSOLIDATED UTILITY SERVICES, INC., and PROMARK UTILITY LOCATORS, INC.<br><br>Defendant. | MEMORANDUM AND ORDER |

**THIS MATTER** is before the Court on Defendants' Consolidated Utility Services, Inc. and ProMark Utility Locators, Inc. (collectively referred to as "Defendants") Motion to Dismiss Punitive Damages Claim of Plaintiff's Complaint and the accompanying Memorandum in Support (Documents #12-13), filed December 13, 2010; Plaintiff's Maria Luisa Mojica Estrada ("Estrada," acting as Administrator of the Estate of Marcelo Estrada-Avellaneda, "Marcelo," deceased) Response in Opposition (Document #14), filed December 30, 2010; Defendants' Reply (Document #15), filed January 10, 2010. This matter is ripe for disposition.

### **BACKGROUND**[1]

Plaintiff is a resident of Iredell County, North Carolina and is the duly appointed Administrator of the Estate of her late husband, Marcelo Estrada-Avellaneda. (Compl. ¶ 1). Marcelo was also a resident of Iredell County, North Carolina, until his death on April 15, 2010.

---

[1] All facts are presented in the light most favorable to Plaintiff Estrada, the party opposing the motion to dismiss.

(Compl. ¶ 2). Defendant Consolidated Utility Services, Inc. is a Nebraska company engaged in the business of locating underground utility lines, including high voltage electrical lines, so that work can be done by other companies safely. (Compl. ¶ 3, 9). Defendant ProMark Utility Locators, a Nebraska company, is a wholly owned subsidiary corporation of Consolidated Utility Services, Inc., engaged in similar work. (Compl. ¶ 4-5, 9).

On April 15, 2010, Marcelo and his co-workers were assigned to a work site in Iredell County, North Carolina. (Compl. ¶ 7). Marcelo was working for Distribution Construction Company ("Distribution Construction") of Greensboro, North Carolina. (Compl. ¶ 10). Distribution Construction had contacted the North Carolina "One-Call" Center in order to have a team sent to locate and mark any underground utility lines at the work site. (Compl. ¶ 10). Defendants were contracted with Energy United (a utility company) to act as an underground utility locator, and the Defendants' employees were sent to locate and mark any underground utility lines as a result of Distribution Construction's call. (Compl. ¶ 8, 11). The Defendants indicated that the work site that Marcelo was working on was clear of underground electrical utility lines. (Compl. ¶ 11). Marcelo then started operating an augur in a trench as a part of his work duties at this site, and was electrocuted by a 7200-volt underground electric utility owned by Energy United. (Compl. ¶ 8). Marcelo died later that day. (Compl. ¶ 8).

On October 13, 2010, Plaintiff initiated this suit in the North Carolina Superior Court of Iredell County alleging wrongful death and seeking punitive damages. (Doc. #1). On October 27, 2010, Defendants filed a notice of removal with this court pursuant to 28 U.S.C. §§ 1332(a) and 1441(a). (Doc. #1). Jurisdiction is founded on diversity of citizenship. (Doc. #1). On December 13, 2010, Defendants filed a Motion to Dismiss the Punitive Damages Claim pursuant to Fed. R.

Civ. P. 12(b)(6). (Doc. #11). In their motion, Defendants argue that Plaintiffs cannot recover punitive damages based on vicarious liability, and that Plaintiff failed to allege facts to state a plausible claim for punitive damages. (Doc. #11).

## ANALYSIS

*1. Standard of Review*

When deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court must view the facts "in a light most favorable to the Plaintiff." Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008) (internal citations omitted). However, the Court does not need to "accept as true unwarranted inferences, unreasonable conclusions, or arguments," and "need not accept the legal conclusions drawn from the facts." Id. The allegations must provide "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). The "mere possibility of misconduct" is not enough for a claim to survive a motion to dismiss. Ashcroft v. Iqbal, 129 S.Ct. 1937, 1950 (2009). The Court must disregard conclusory statements unsupported by factual allegations while considering the plausibility of a claim, but "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id. The Court should be guided by "its judicial experience and common sense."[2] Id.

---

[2] Plaintiff erroneously relies on the "no set of facts" standard. See Conley v. Gibson, 355 U.S. 41, 45-46 (1957). The "no set of facts" standard has been significantly abrogated by the Twombly and Iqbal line of cases. Twombly, 550 U.S. at 563 ("The ['no set of facts'] phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard"), See also Iqbal, 129 S.Ct. at 1949 (Rule 8 "asks for more than a sheer possibility that a defendant has acted unlawfully"). This Court will use the accepted pleading standard as set by the Supreme Court in Twombly.

*II. The Motion to Dismiss*

In North Carolina, punitive damages "are awarded as punishment due to the outrageous nature of the wrongdoer's conduct." Juarez-Martinez v. Deans, 424 S.E.2d 154, 159-60 (N.C.App. 1993), rev. denied, 333 N.C. 539 (1993). Punitive damages are for the purpose of punishment and deterrence. Watson v. Dixon, 532 S.E.2d 175, 178 (N.C. 2000) (citing Oestreicher v. American Nat'l Stores, Inc., 225 S.E.2d 797, 807-08 (N.C. 1976)). In order to prove that punitive damages are warranted, the plaintiff must show at trial that the defendant is responsible for compensatory damages, and that an aggravating factor was present and related to the offense. N.C. Gen. Stat. §1D-15(a) (2003). The aggravating factors are (1) fraud; (2) malice; or (3) willful or wanton conduct. N.C. Gen. Stat. § 1D-15(a). The Plaintiff does not allege that Defendants or Defendants' agents acted with fraud or malice, but with "willful or wanton conduct." Willful and wanton conduct is defined as "the conscious and intentional disregard of and indifference to the rights and safety of others, which the defendant knows or should know is reasonably likely to result in injury, damage, or other harm."[3] N.C. Gen. Stat. § 1D-5(7).

Defendant correctly notes that North Carolina law does not allow punitive damages on the grounds of vicarious liability,[4] citing N.C. Gen. Stat. § 1D-15(c). ("Punitive damages shall not be

---

[3] The analysis for the "willful and wonton" aggregating factor required for a punitive damages claim, see N.C. Gen. Stat.§ 1D-15(a), is different from the analysis used with regards to the "willful and wonton" standard relating to the "intentional torts" exception to the Workers' Compensation Act's bar on suits against the employer. E.g. Woodson v. Rowland, 407 S.E.2d 222, 226 (N.C. 1991) (allowing evidence of "willful and wonton" conduct with a substantial certainty of harm to count as an intentional tort, and thus allowing a civil suit against the employer in addition to the Workers' Compensation claim), See infra note 4.

[4] N.C. Gen. Stat. Section 97-10.1 provides that if an employee gets worker's compensation, then that bars almost all other compensation, including punitive damages, against the employer at common law. (1985), See Woodson v. Rowland, 407 S.E.2d 222, 227 (N.C. 1991) (Noting an exception to this general rule that allows additional compensation when employer commits an intentional tort). However, the liability of third parties (like Defendants) is not completely barred by the acquisition of worker's compensation. NC Gen. Stat. § 97-10.2 (allowing tort claims against third parties, but any amount awarded in worker's compensation must be subtracted from the damages).

4

awarded against a person solely on the basis of vicarious liability for the acts or omissions of another"). Instead, a punitive damage claim requires *direct* action by the alleged wrongdoer. N.C. Gen. Stat. § 1D-15(c) ("Punitive damages may be awarded against a person only if that person participated in the conduct constituting the aggravating factor giving rise to the punitive damage"). If the defendant is a corporation, the "direct action" requirement is satisfied if "the officers, directors, or managers of the corporation participated in or condoned the conduct constituting the aggravating factor giving rise to punitive damages." N.C. Gen. Stat. § 1D-15(c). To survive a motion to dismiss, Plaintiff must plead sufficient facts to support a plausible claim that at least one of the officers, directors, or managers of the Defendant corporations acted with or condoned "willful and wanton" conduct with regards to this incident.

It's not clear from Plaintiff's complaint how Plaintiff intends to support a claim for punitive damages. The complaint does not point to any specific officers, directors, or managers taking part in or condoning any willful or wanton conduct. Willful and wanton conduct by Defendants' employees is not enough to support a claim for punitive damages without direct action or approval from Defendants' officers, directors, or managers. N.C. Gen. Stat. § 1D-15(c). Plaintiff alleges insufficient employee training and inadequate policies and procedures related to the locating and marking of the underground utility lines. (Compl. ¶ 12(d-e, g-h)). It is possible that officers, directors, or managers of Defendants could have been involved in or approved of employee training and creation of policies and procedures. However, Plaintiff does not proffer any specific facts tending to show that an officer, director, or manager of Defendant companies "willfully and wantonly" trained or caused employees to be trained insufficiently. While willful and wanton conduct can be inferred at least partially from company policies, Plaintiff presents no facts that an

5

officer, director, or manager of the Defendant participated in the allegedly negligent policies or procedures. E.g. Everhart v. O'Charley's Inc., 683 S.E.2d 728 (N.C.App. 2009) (finding that "willful or wanton conduct" could be inferred when company policy required a manager to fill out paperwork before helping an injured customer). Plaintiff's allegations are more akin to a mere negligence claim as opposed to willful or wanton conduct.

Construing the facts in the light most favorable to the Plaintiff, there are insufficient facts that support a plausible claim of "willful or wanton conduct." Plaintiff's complaint does not allege any facts that provide a plausible claim that "the officers, directors, or managers of the corporation participated in or condoned" any of the actions involved in this incident. See Phillips v. Restaurant Management of Carolina, L.P., 552 S.E.2d 686, 694 - 695 (N.C.App. 2001) (Dismissing a punitive damages claim when no evidence supported the proposition that the restaurant condoned or participated in the waiter's actions), See also Strawbridge v. Sugar Mountain Resort, Inc., 320 F.Supp.2d 425, 436 (W.D.N.C. 2004) (Punitive damage claim against ski resort that did not mark bare spots on the slope, even after reported injuries, misrepresented the amount of snow on the slopes, and misrepresented customer's rights under the law was not enough evidence to survive a motion to dismiss. Further evidence to support "willfulness" was required).

Plaintiff's allegations are merely conclusory and are unsupported by any allegations of fact. Thus, the complaint does not rise to the level required to merit punitive damages. Taking these facts in the light most favorable to the Plaintiff, and the requirement that a punitive damage claim must rest on more than vicarious liability, the Court finds that the Punitive Damages claim cannot survive this motion to dismiss.

## CONCLUSION

**WHEREFORE**, for the foregoing reasons, Defendants' Motion to Dismiss the Punitive Damages Claim of Plaintiff's Complaint is **GRANTED**. Plaintiff's claim will be dismissed without prejudice. [5]

Signed: June 2, 2011

Richard L. Voorhees
United States District Judge

---

[5] "Dismissal with prejudice is a harsh sanction which should not be invoked lightly." Davis v. Williams, 588 F.2d 69, 70 (4th Cir. 1978). The Court is dismissing this action without prejudice in order to allow for the possibility that punitive damages may become appropriate with further discovery, giving particular consideration to the fact that any evidence that could support punitive damages appears to lie within the control of the Defendants.